# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK

| | |
|---|---|
| LAUREN HEFFERNAN and KAYLA JENKINS, | Index No. |
| Plaintiff(s), | |
| -against- | **Summons** |
| DELTA AIRLINES, INC. and ALLIANCE GROUND INTERNATIONAL, LLC, | |
| Defendant(s). | Date Index No. Purchased: |

To the above named Defendant(s)

DELTA AIR LINES, INC.
ALLIANCE GROUND INTERNATIONAL, LLC
c/o New York Secretary of State

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   Defendant's place of business which is

Dated:   New York, New York

December 20, 2016

Schwartz Perry & Heller LLP

by _____

Brian Heller

**Attorneys for Plaintiff**

295 Madison Avenue
New York, New York 10017
(212) 889-6565

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
LAUREN HEFFERNAN and KAYLA JENKINS,

               *Plaintiffs,*

      -against-

DELTA AIR LINES, INC. and
ALLIANCE GROUND INTERNATIONAL, LLC,

               *Defendants.*
-------------------------------------------------------------------X

**Index No.:**

**VERIFIED COMPLAINT**

Plaintiffs, as and for their Verified Complaint, respectfully allege, all upon information and belief, as follows:

### IDENTITY OF PARTIES

1.      At all relevant times mentioned herein, Plaintiff Lauren Heffernan ("Heffernan") was employed by Defendant Delta Air Lines, Inc. ("Delta").

2.      At all relevant times mentioned herein, Plaintiff Kayla Jenkins ("Jenkins") was employed by Delta and/or Alliance Ground International, LLC ("AGI").

3.      At all relevant times mentioned herein, Delta was and is a corporation duly organized and existing under the laws of Delaware and was and is authorized to do business in the County, City and State of New York.

4.      At all relevant times mentioned herein, AGI was and is a limited liability corporation duly organized and existing under the laws of Florida and was and is authorized to do business in

the City and State of New York.

5.      Delta is one of the world's largest global airlines, helping more than 160 million customers each year with their travel and cargo needs.

6.      At all relevant times herein, AGI has and continues to provide cargo handling to Delta as a partner and affiliate and AGI acts as a co-employer with Delta over individuals that it hires.

7.      Both Defendants are collectively referred to herein as Delta.

## BACKGROUND RELEVANT TO BOTH PARTIES

8.      Heffernan began her employment with Delta in June 2015 as a Cargo Agent.

9.      On or about August 3, 2015, Jenkins began her employment with AGI and/or Delta as a Cargo Agent.

10.     Jenkins worked out of Delta's office, on a Delta computer with a Delta password, and was subject to the direction and control of Delta with regard to the terms, conditions and privileges of her employment, which included: training and supervision by Delta employees, receiving directions essentially from Delta employees, working only in Delta's workplace and with Delta employees, having a Delta password, being assigned to a Delta computer, performing work for Delta, following the rules and regulations of Delta employees, so that Jenkins actually was, and reasonably

2

regarded herself as, a Delta employee and was treated as such by Delta's employees and by all who had dealings with her.

11.     At the time Jenkins began working for Delta and/or AGI, she was 18 years of age, having just graduated from High School only months earlier, and she was getting ready to start college in the Fall of 2015.

12.     As Cargo Agents, Heffernan and Jenkins' duties included expediting and routing the movement of incoming and outgoing cargo and freight shipments in airline, train, and trucking terminals, shipping docks, taking orders from customers and arranging pickup of freight and cargo for delivery to loading platforms and entering shipment information into a computer.

13.     At the time they were hired, Heffernan and Jenkins were advised that Mike Keve ("Keve"), who had been employed with Delta for approximately 25 years, would be their "mentor" and Keve was assigned to train them in the performance of their duties for Delta, which he did.

14.     At all relevant times herein, Heffernan and Jenkins satisfactorily performed their duties as Cargo Agents.

15.     On February 4, 2016, at approximately 3:15 pm, Jenkins was sitting at a desk doing work on a computer, while Keve was similarly doing work at a computer at a desk very close to her.

3

16.     Jenkins noticed that she no longer heard any typing or clicking from Keve and turned her head slightly to see what Keve was doing.

17.     At that moment, Jenkins saw Keve sitting at his desk, with his penis out.

18.     Jenkins was horrified and immediately turned back to face her computer and did not move.

19.     Jenkins did not believe Keve was aware that she had seen him with his penis out at his desk, but she did not turn to look and Keve soon left the workplace.

20.     Keve's conduct was taking place openly in the office where he and Jenkins worked, and, in fact, Keve was so brazen that he exposed himself while sitting near a window, so that Jenkins was forced to be degraded and humiliated by Keve's perverted and obscene actions.

21.     Jenkins, who was just 18 years old and was fearful of reporting Keve's repulsive conduct to management, immediately told Heffernan, who was not assigned to work that day, by text message.

22.     Upon receipt of Jenkins' text message, Heffernan recalled that approximately one month earlier, she had thought she had seen Keve exposing himself, but had only seen this out of the corner of her eye and dismissed it.

4

23.     When Heffernan arrived to the workplace soon thereafter on her next scheduled day of work, Heffernan spoke to Lauren Toscano ("Toscano"), who was the administrative assistant of Mike Rizzo ("Rizzo") the Director of North American Operations for Delta Cargo, and reported that Jenkins had seen Keve exposing himself in the workplace.

24.     Toscano's response, incredibly, was that Delta was already aware that Keve had been masturbating in the office and that it would not take any action out of concern that Keve would lose his job, so that the women in the workplace, including Jenkins, would have to continue to be subjected to his disgusting behavior.

25.     Heffernan then spoke to Rizzo directly and urged that something be done to address Keve's outrageous conduct, but Rizzo responded that since Jenkins had not approached him directly, he had no reason to address the situation, so that Keve was empowered to continue to his disgusting behavior any time he desired.

26.     Revealingly, neither Rizzo nor anyone from Delta or AGI ever spoke to Jenkins about Keve's conduct and no action was taken by Delta to ensure that Jenkins would not be subjected to Keve's obscene behavior again.

27.     In fact, Rizzo made a joke out of Keve's conduct, saying to General Manager Peter Ferrantelli, in front of Heffernan, in or around late February 2016, "I'm horny.  Hey Peter, let me sit at your desk and rub one out by the window so everyone could see," which was a clear reference to

5

Keve's vulgar sexual conduct in the workplace.

28.     Jenkins was filled with fear each and every time she reported to work, given that Delta refused to address Keve's obscene conduct, since she was vulnerable and reasonably feared that she would be further subjected to sexual harassment.

29.     In March 2016, during a meeting with Rizzo to discuss her schedule, Jenkins attempted to discuss the impact that Keve's conduct was having on her, but Rizzo stopped Jenkins and told her that if she said anything more, he would "have to do something," discouraging Jenkins from complaining and confirming that Delta intended to protect the perverted Keve over Jenkins, thereby condoning and permitting obscene sexual harassment in the workplace.

30.     Jenkins was abruptly fired on May 3, 2016, without warning.

31.     The baseless reason offered for Jenkins' termination was that she was not working enough hours and that her school was more important, although, between February 4, 2016 and her termination, Jenkins' hours were never raised as an issue or problem, so that the excuse given for her termination was a pretext.

32.     On May 9, 2016, at approximately 3:40 pm, Heffernan was sitting at a desk in Delta's office, and Keve was sitting in a desk located in a cubicle diagonal to her.

6

33.     Heffernan turned to get the break room key and saw that Keve was reclined in his chair, with his penis exposed and was masturbating, while staring at Heffernan.

34.     Heffernan was disgusted and quickly turned back around, and Keve, who clearly noticed that Heffernan saw him, leaned forward in his chair.

35.     Heffernan went to Rizzo's office to report Keve's obscene conduct to him, but he was not there, so Heffernan asked Rizzo's assistant, Toscano, where Rizzo was and said, "He's doing it again," referring to Keve, and also said that she did not want to go back into the office with Keve.

36.     Toscano said to Heffernan, "No, that didn't happen," confirming that Rizzo and Delta intentionally ignored and condoned Keve's conduct, and asking if Heffernan was going to say or do anything about it, expressing concern that if Heffernan did so, Keve could lose his job.

37.     Toscano, in response to Heffernan reporting that Keve was openly masturbating in the workplace again, told Heffernan and that Keve had been a valued employee and that reporting his conduct could "ruin" him, as if Heffernan should be more concerned with Keve's employment than his sexually harassing conduct, which was a view that Rizzo and Delta had clearly established by previously permitting and condoning Keve's behavior.

38.     Heffernan then spoke with Rizzo and with Sal Ferraro ("Ferraro"), Heffernan's Supervisor who reported to Rizzo, and Heffernan was told to send him an email describing Keve's

7

conduct.

39.     Ferraro confirmed that Delta was aware of and condoned Keve masturbating in the office, stating in text messages to Heffernan, "Our boss knows and isn't doing anything;" "He [Keve] has a problem and many people knew for a long time, I didn't know anything;" and confirming that Rizzo forwarded Heffernan's complaint to Human Resources and "[t]hey're the weird ones because they let it continue."

40.     In accordance with the directive she received, Heffernan sent an email to Ferraro on May 13, 2016, where, among other things, she described witnessing Keve masturbating on May 9 and that she believed she had seen Keve masturbate in the office before and that Jenkins had also seen Keve masturbate at his desk and that Heffernan had contemporaneous text messages from Jenkins confirming what Jenkins had witnessed.

41.     On or about May 16, 2016, Rizzo told Heffernan to come in to the workplace on May 17, when Heffernan was not scheduled to work, to meet with someone from Delta's Human Resources about her complaint.

42.     When Heffernan asked if Human Resources would be interviewing Jenkins about what she witnessed, Rizzo told her they would not because Jenkins worked for AGI, which was a clear effort to limit the scope of the purported "investigation" that would occur.

8

43.     However, when Heffernan arrived at Delta on May 17, 2016, Heffernan was not questioned by someone from Human Resources, but by Jay Metzger ("Metzger"), another Supervisor who reports to Rizzo and who was also a close friend of Keve.

44.     During Heffernan's meeting with Metzger, Heffernan described seeing Keve masturbate in the workplace and also showed Metzger the text messages she received from Jenkins in February 2016, when Jenkins also witnessed Keve exposing himself at his desk in the office.

45.     Metzger responded by telling Heffernan, "We'll take it from here" and also told Heffernan that he and Keve were very good friends, making it clear that any investigation conducted by Delta would be a sham.

46.     The next time that Heffernan came to work, which was Friday, May 20, 2016, no one from Delta would speak to her and they gave her dirty looks, as if she had done something wrong.

47.     On Saturday, May 21, 2016, Heffernan's car broke down when she was on her lunch break and, after calling a mechanic she knew who was able to make her car operable, Heffernan was able to return to work, though she was late.

48.     When she returned, Heffernan explained why she was late to Metzger and Metzger told Heffernan to write a statement, which she did and Heffernan also provided a receipt for the repair to her car.

9

49.     On the following Monday, May 23, 2016, Thurston Cruen ("Cruen"), the third Supervisor reporting to Rizzo, told Heffernan that she was being suspended because she had come back late from lunch on May 21, 2016.

50.     Heffernan was shocked that she was being suspended for car trouble, while Keve was not disciplined at all for staring at Heffernan and masturbating in the office, and she asked how long the suspension would be, and Cruen stated that Human Resources would be contacting Heffernan.

51.     About four days later, Heffernan received a phone call from Sonya Williams ("Williams") of Delta's Human Resources.

52.     Heffernan asked Williams if her call was about sexual harassment or about Heffernan's car breaking down, at which point Williams dismissed Heffernan's complaint regarding Keve, saying it was "unfounded," and said that the call was solely about Heffernan, at which point Heffernan explained that she had only been late in returning from lunch due to car troubles and Heffernan even sent Williams the receipt from the car mechanic.

53.     Delta never contacted Heffernan again after her call with Williams, making it clear that Delta desired that Heffernan stay out of its workplace to punish her for her complaints about Keve's sexually harassing behavior and Delta's condonation of that harassment.

10

54.     Heffernan confirmed her termination in an email she sent to Williams on June 8, 2016, to which Williams did not respond.

55.     As a result of Defendants' discriminatory conduct, Plaintiffs have suffered the adverse effects of sexual harassment and retaliation, the quality of their life has been irreparably damaged and their self-esteem, self-respect and well-being has been damaged because they were subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Plaintiffs into the future, so that the quality of Plaintiffs' life has been negatively impacted as a result of the discrimination to which Plaintiffs were subjected by Defendants.

56.     The acts of Defendants were committed with reckless indifference in the face of a perceived risk that their actions would violate Plaintiffs' protected rights under the New York City Human Rights Law so that, in addition to the damages inflicted upon Plaintiffs and in addition to all the other measures of relief to which Plaintiffs may be properly entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

11

### AS AND FOR THE FIRST CAUSE OF ACTION
### ON BEHALF OF HEFFERNAN AGAINST DELTA
### FOR GENDER DISCRIMINATION IN VIOLATION
### OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE
### ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

57.     Heffernan repeats, re-alleges and incorporates in full paragraphs 1 through 56 of this Complaint, as though fully set forth at length herein.

58.     The entirety of the acts which constitute and form this Cause of Action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Heffernan while she was in the course of her employment with Delta.

59.     The conduct that Delta took against Heffernan that forms the basis of this Cause of Action was unwelcome to her, a fact which Delta knew, or should have known, as a result of Heffernan's response and the actual nature of the conduct.

60.     Delta is liable to Heffernan for the sexual harassment she suffered in her workplace, because the unlawful conduct was permitted and condoned by Delta management and supervisory personnel, who allowed and condoned a workplace permeated with intimidation and harassment that altered the terms, conditions and privileges of Heffernan's employment and created an abusive, threatening and hostile work environment where Heffernan was treated less well because of her gender.

12

61.    The aforementioned acts of Delta constitute unlawful gender discrimination against

Heffernan in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-

107(1)(a) (referred to as "The New York City Human Rights Law"), which provides *inter alia*, that:

> It shall be unlawful discriminatory practice: (a) For an employer or an
> employee or agent thereof, because of the . . . gender . . . of any
> person to discriminate against such a person in compensation or in
> terms, conditions or privileges of employment.

62.    As a result of Delta's violation of the New York City Human Rights Law, Delta is

liable to Heffernan pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of

said statute for "costs and reasonable attorney's fees," as has been judicially established.

63.    As a proximate result of Delta's conduct, Heffernan has been adversely affected in

her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and

Heffernan believes Delta's conduct, complained of herein, has and will continue to have a

devastating effect upon her career and the quality of her life, all of which Heffernan alleges to be in

the amount of Two Million ($2,000,000) Dollars.

64.    Here, the acts of Delta were so reprehensible and were done with reckless indifference

in the face of a perceived risk that its actions would violate Heffernan's protected rights under the

New York City Human Rights Law, that, in addition to all the damages inflicted upon Heffernan and

in addition to all the measures of relief to which Heffernan may properly be entitled herein, Delta

should additionally be required to pay punitive damages as punishment for its discriminatory conduct

in the further amount of Three Million ($3,000,000) Dollars, in order to deter Delta and others

13

similarly situated from engaging in such conduct in the future.

65.     Heffernan, therefore, seeks compensatory damages in the this Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

### AS AND FOR THE SECOND CAUSE OF ACTION ON BEHALF OF JENKINS AGAINST DEFENDANTS FOR GENDER DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

66.     Jenkins repeats, re-alleges and incorporates in full paragraphs 1 through 56 of this Complaint, as though fully set forth at length herein.

67.     The entirety of the acts which constitute and form this Cause of Action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically set forth herein, were perpetrated upon Jenkins while she was in the course of her employment with Defendants.

68.     The conduct that Defendants took against Jenkins that forms the basis of this Cause of Action was unwelcome to her, a fact which Defendants knew, or should have known, as a result of Jenkins' response and the actual nature of the conduct.

14

69.     Defendants are liable to Jenkins for the sexual harassment she suffered in her workplace, because the unlawful conduct was permitted and condoned by Defendants' management and supervisory personnel, who allowed and condoned a workplace permeated with intimidation and harassment that altered the terms, conditions and privileges of Jenkins' employment and created an abusive, threatening and hostile work environment where Jenkins was treated less well because of her gender.

70.     The aforementioned acts of Defendants constitute unlawful gender discrimination against Jenkins in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to as "The New York City Human Rights Law"), which provides *inter alia*, that:

> It shall be unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the . . . gender . . . of any person to discriminate against such a person in compensation or in terms, conditions or privileges of employment.

71.     As a result of Defendants' violation of the New York City Human Rights Law, Defendants are liable to Jenkins pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

72.     As a proximate result of Defendants' conduct, Jenkins has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Jenkins believes Defendants' conduct, complained of herein, has and will continue to have a

15

devastating effect upon her career and the quality of her life, all of which Jenkins alleges to be in the amount of Two Million ($2,000,000) Dollars.

73.     Here, the acts of Defendants were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Jenkins' protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Jenkins and in addition to all the measures of relief to which Jenkins may properly be entitled herein, Defendants should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

74.     Jenkins, therefore, seeks compensatory damages in the this Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

### AS FOR THE THIRD CAUSE OF ACTION ON BEHALF OF HEFFERNAN AGAINST DELTA FOR RETALIATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

75.     Heffernan repeats, realleges and incorporates in full paragraphs 1 through 56 of this Complaint, as though fully set forth at length herein.

16

76.     Each time that Heffernan complained of the discriminatory conduct to which she was subjected, she was engaged in a protected activity under the New York City Human Rights Law, of which Delta was aware.

77.     As a proximate result of Heffernan engaging in protected activity under the New York City Human Rights Law, Heffernan suffered adverse employment action, including her termination, that was causally connected to her complaints of sexual.

78.     Delta's unlawful conduct has adversely affected her employment, her emotional well-being, the quality of her life and her life's normal pursuits and Heffernan believes that the injuries inflicted upon her, which were a direct result of the occurrences complained of herein, have and will continue to cause Heffernan damage.

79.     The aforementioned acts of Delta constitute unlawful retaliation against Heffernan in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

80.     As a direct and proximate result of Delta's violation of the New York City Human Rights Law, Delta is liable to Heffernan pursuant to §8-502 of said statute for "damages" and pursuant to §8-502(f) of said statute "for costs and reasonable attorney's fees," as provided for under

17

the law.

81.     As a direct and proximate result of Delta's conduct complained of herein, and as

alleges in this Cause of Action, as well as the conduct set forth in this Complaint, Heffernan has

suffered damages, injuries and losses, which includes the emotional pain and suffering she has been

caused to suffer and continues to suffer, all of which Heffernan alleges to be in the amount of Two

Million ($2,000,000) Dollars in compensatory damages.

82.     Here, the acts of Delta were so reprehensible and were done with reckless indifference

in the face of a perceived risk that its actions would violate Heffernan's protected rights under the

New York City Human Rights Law, that, in addition to all the damages inflicted upon Heffernan and

in addition to all the measures of relief to which Heffernan may properly be entitled herein, Delta

should additionally be required to pay punitive damages as punishment for its discriminatory conduct

in the further amount of Three Million ($3,000,000) Dollars, in order to deter Delta and others

similarly situated from engaging in such conduct in the future.

83.     Heffernan, therefore, seeks compensatory damages in this Cause of Action, including,

among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000)

Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive

damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus

prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

18

## AS FOR THE FOURTH CAUSE OF ACTION ON BEHALF OF JENKINS AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

84.     Jenkins repeats, realleges and incorporates in full paragraphs 1 through 56 of this Complaint, as though fully set forth at length herein.

85.     Each time that Jenkins complained of the discriminatory conduct to which she was subjected, she was engaged in a protected activity under the New York City Human Rights Law, of which Defendants were aware.

86.     As a proximate result of Jenkins engaging in protected activity under the New York City Human Rights Law, Jenkins suffered adverse employment action, including her termination, that was causally connected to her complaints of sexual.

87.     Defendants' unlawful conduct has adversely affected her employment, her emotional well-being, the quality of her life and her life's normal pursuits and Jenkins believes that the injuries inflicted upon her, which were a direct result of the occurrences complained of herein, have and will continue to cause Jenkins damage.

88.     The aforementioned acts of Defendants constitute unlawful retaliation against Jenkins in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

19

> It shall be unlawful discriminatory practice for any person engaged in
> any activity to which this chapter applies to retaliate or discriminate
> in any manner against any person because such person has (i)
> opposed any practice forbidden under this chapter . . .

89.     As a direct and proximate result of Defendants' violation of the New York City
Human Rights Law, Defendants are liable to Jenkins pursuant to §8-502 of said statute for
"damages" and pursuant to §8-502(f) of said statute "for costs and reasonable attorney's fees," as
provided for under the law.

90.     As a direct and proximate result of Defendants' conduct complained of herein, and
as alleges in this Cause of Action, as well as the conduct set forth in this Complaint, Jenkins has
suffered damages, injuries and losses, which includes the emotional pain and suffering she has been
caused to suffer and continues to suffer, all of which Jenkins alleges to be in the amount of Two
Million ($2,000,000) Dollars in compensatory damages.

91.     Here, the acts of Defendants were so reprehensible and were done with reckless
indifference in the face of a perceived risk that its actions would violate Jenkins' protected rights
under the New York City Human Rights Law, that, in addition to all the damages inflicted upon
Jenkins and in addition to all the measures of relief to which Jenkins may properly be entitled herein,
Defendants should additionally be required to pay punitive damages as punishment for their
discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter
Defendants and others similarly situated from engaging in such conduct in the future.

20

92.     Jenkins, therefore, seeks compensatory damages in this Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**WHEREFORE,** Plaintiff Lauren Heffernan demands judgment against Delta on the First Cause of Action in the sum of Two Million ($2,000,000) Dollars in compensatory damages and the further and additional sum of Three Million ($3,000,000) Dollars in punitive damages, for a total of Five Million ($5,000,000) Dollars; Plaintiff Kayla Jenkins demands judgment against Defendants on the Second Cause of Action in the sum of Two Million ($2,000,000) Dollars in compensatory damages and the further and additional sum of Three Million ($3,000,000) Dollars in punitive damages, for a total of Five Million ($5,000,000) Dollars; Plaintiff Lauren Heffernan demands judgment against Delta on the Third Cause of Action in the sum of Two Million ($2,000,000) Dollars in compensatory damages and the further and additional sum of Three Million ($3,000,000) Dollars in punitive damages, for a total of Five Million ($5,000,000) Dollars; Plaintiff Kayla Jenkins demands judgment against Defendants on the Fourth Cause of Action in the sum of Two Million ($2,000,000) Dollars in compensatory damages and the further and additional sum of Three Million ($3,000,000) Dollars in punitive damages, for a total of Five Million ($5,000,000) Dollars; plus pre-judgment interest, the costs of this action and reasonable attorney's fees for each cause of action; Plaintiff Kayla Jenkins demands judgment against Defendants on the Third Cause of Action in the sum of Five Million Dollars ($5,000,000) in compensatory damages and on the Fourth Cause of

21

Action in the sum of Five Million Dollars ($5,000,000); so that, for all Causes of Action, Plaintiffs

seek a total of Twenty Million ($20,000,000) Dollars, plus costs, prejudgment interest and attorney's

fees for each Cause of Action; and for such other relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiffs*

By:

DAVIDA S. PERRY
BRIAN HELLER
295 Madison Avenue
New York, New York 10017
(212) 889-6565

22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
LAUREN HEFFERNAN and KAYLA JENKINS,

                              **Index No.:**

         *Plaintiffs,*

    -against-                       **VERIFICATION**

DELTA AIRLINES, INC. and
ALLIANCE GROUND INTERNATIONAL, LLC,

         *Defendants.*
-------------------------------------------------------------------------X

STATE OF NEW YORK      )
                           )ss:
COUNTY OF NEW YORK  )

      LAUREN HEFFERNAN, being duly sworn, says:

      I am a Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

                                    LAUREN HEFFERNAN

Sworn to me this 20th
day of December 2016

NOTARY PUBLIC

BRIAN A. HELLER
Notary Public, State of New York
No. 02HE6081554
Qualified in Westchester County
Commission Expires October 7, 2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
LAUREN HEFFERNAN and KAYLA JENKINS,

                             **Index No.:**

        *Plaintiffs,*

   -against-                         **VERIFICATION**

DELTA AIRLINES, INC. and
ALLIANCE GROUND INTERNATIONAL, LLC,

        *Defendants.*
-------------------------------------------------------------------------X

STATE OF NEW YORK       )
                         )ss:
COUNTY OF NEW YORK   )

        KAYLA JENKINS, being duly sworn, says:

        I am a Plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

                                            KAYLA JENKINS

Sworn to me this 20th
day of December 2016

NOTARY PUBLIC

        BRIAN A. HELLER
   Notary Public, State of New York
        No. 02HE6081554
   Qualified in Westchester County
  Commission Expires October 7, 20

                    24

FILED: NEW YORK COUNTY CLERK 01/12/2017 01:51 PM     INDEX NO. 150092/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 01/12/2017

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  150092/2017                              Purchased/Filed: January 5, 2017

STATE OF NEW YORK          SUPREME COURT          NEW YORK COUNTY

_Lauren Heffernan, et ano._                                    Plaintiff

against

_Delta Airlines, Inc. and Alliance Ground International, LLC_    Defendant

STATE OF NEW YORK
COUNTY OF ALBANY          SS.:

_____ James Perone _____ , being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; that on _____ January 9, 2017 _____ , at ___11:45am___ , at the office of the Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint with Notice of Commencement of Action Subject to Mandatory Electronic Filing                                                                              on

_____ Delta Air Lines, Inc. s/h/a Delta Airlines, Inc. _____ , the

Defendant in this action, by delivering to and leaving with _____ Sue Zouky _____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, ___2___ true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of ___40___ dollars; That said service was made pursuant to Section ___306 Business Corporation Law___ .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served:  Approx. Age: ___55___   Approx. Wt: ___125lbs___   Approx. Ht: ___5'1___

Color of skin: ___White___   Hair color: ___Red/Blonde___  Sex: ___Female___  Other: _____

Sworn to before me on this

___9th___ day of _____ January, 2017 _____

_____          _____
SCOTT SCHUSTER                                              James Perone
NOTARY PUBLIC, State of New York                       **Attny's File No.**
NO. 01SC6308636, Albany County                   Invoice•Work Order # SP1617731
Commission Expires July 28, 2018

_SERVICO, INC. - PO BOX 871 - ALBANY, NEW YORK 12201 - PH 518-463-4179_

1 of 1

Case 1:17-cv-00888-LTS   Document 1-1   Filed 02/07/17   Page 28 of 28

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  150092/2017                                    Purchased/Filed: January 5, 2017

STATE OF NEW YORK              SUPREME COURT              NEW YORK COUNTY

---

*Lauren Heffernan, et ano.*                                                     Plaintiff

against

*Delta Airlines, Inc. and Alliance Ground International, LLC*                    Defendant

---

STATE OF NEW YORK
COUNTY OF ALBANY            SS.:

_____James Perone_____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____January 9, 2017_____ , at __11:45am__ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint with Notice of Commencement of Action Subject to Mandatory Electronic
Filing                                                                                                       on

_____Alliance Ground International, LLC_____ , the

Defendant in this action, by delivering to and leaving with _____Sue Zouky_____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of __40__ dollars; That said service

was made pursuant to Section __303 Limited Liability Company Law__

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served: Approx. Age __55__ Approx. Wt: __125lbs__ Approx. Ht: __5'1__

Color of skin: __White__ Hair color: __Red/Blonde__ Sex: __Female__ Other: _____

Sworn to before me on this

__9th__ day of _____January, 2017_____

_____                    _____
SCOTT SCHUSTER                                              James Perone
NOTARY PUBLIC, State of New York                      **Attny's File No.**
NO. 01SC6308636, Albany County                       Invoice•Work Order # SP1617816
Commission Expires July 28, 2018

*SERVICO, INC. - PO BOX 871 - ALBANY, NEW YORK 12201 - PH 518-463-4179*